**PARSONS CONSTRUCTION CO., Appellant,**

v.

**MISSOURI PUBLIC SERVICE COMPANY, and State Highway Commission of Missouri, Respondents.**

**No. 52335.**

Supreme Court of Missouri, Division No. 2.

Feb. 12, 1968.

Motion for Rehearing or to Transfer to Court en Banc Denied March 11, 1968.

Charles E. Rendlen, Jr., Rendlen & Rendlen, Hannibal, Eugene E. Andereck, Pickett, Andereck & Hauck, Trenton, Charles B. Blackmar, St. Louis, for appellant.

Robert L. Hyder, Bruce A. Ring, State Highway Commission, Jefferson City, for defendant-respondent.

N. R. Bradley, Ike Skelton, Jr., Lexington, Roscoe E. Moulthrop, Bethany, for defendant-respondent, Missouri Public Service Co., Bradley, Skelton & Schelp, Lexington, of counsel.

STOCKARD, Commissioner.

Plaintiff has appealed from the judgment of the trial court rendered pursuant to jury verdict in favor of Missouri Public Service Company (hereafter referred to as defendant) and pursuant to a directed verdict in favor of the State Highway Commission of Missouri (hereafter referred to as the Commission). Plaintiff sought damages in excess of $60,000.

Plaintiff, a corporation engaged in the business of road construction, was awarded a contract by the Commission for the construction of a public highway, known as Route DD (also referred to as Route SDD) in Harrison County, of slightly more than seven miles in length. Located on the public right of way were 167 poles which were owned and used by defendant for the transmission of electric energy. Defendant knew of the proposed change in the highway, and on December 29, 1960, its representative inquired by letter of the Commission when the removal of its poles would be required. The reply was that the Commission did not propose to construct the highway in 1961, and that the Commission could not then say when the construction would be done, but that defendant would have sufficient time to prepare its plans following the completion of the design for

the highway. In July 1961 defendant was sent a set of "plan and profile sheets" so it could plan the "pole line adjustment" necessary to conform to the construction of the highway, and defendant was further notified that the Commission planned to advertise for bids in the fall of 1961 and award a contract shortly thereafter. On December 28, 1961, the Commission advised defendant of the contract entered into with plaintiff, and stated that its resident engineer would advise defendant "as soon as the right-of-way on this project has been staked in order that you may complete your pole line removal." On March 27, 1962 the Commission notified defendant that "the right-of-way staking has been completed," and that "you may proceed with your pole-line relocation any time that is convenient with you."

The contract between plaintiff and the Commission provided that the work should be completed within 70 "working days" after the date to be specified in a "Notice to Proceed" from the Commission, and it was further provided that should plaintiff fail to complete the work in the "time specified or such additional time as may be allowed by the Engineer under the contract," liquidated damages should be charged against plaintiff in the amount of $35.00 per day.

Plaintiff was notified to proceed with the construction in January 1962. We cannot determine when the Commission started counting the 70 "working days," but in April plaintiff was told by an agent of the Commission that "time was being charged." At that time plaintiff had not started work.

Mr. George Parsons, president of plaintiff, and Mr. David Yohn, plaintiff's foreman, testified that during April they had conversations with Mr. Dale Henry, a representative of defendant, and that he had assured them that the poles would be removed "right away." It was on May 14 that plaintiff first moved any equipment to the project site, and its "heavy equipment"

was moved there on June 18. At that time the poles had not been removed. Defendant's work crew did some work in relocating the poles in May, but the men were taken off that job to work on new customer installation. In July defendant decided to have the electric line relocated under contract. The contractor started work in the latter part of July or early August, and the relocation of the poles was completed on August 28.

Plaintiff's evidence tended to show that it was delayed in the construction work because of the presence of the poles in the right of way. The Commission stopped charging "work days" against plaintiff on July 6, because of the presence of the poles, and did not resume charging "work days" until August 28. Plaintiff completed the project on September 11.

Defendant's evidence pertained primarily to the issue of damages, but it also showed that between July 15 and July 22 there were some "heavy rains," and that there was "wet weather" in August. Defendant's evidence also tended to show that the poles did not interfere with a substantial portion of the work. The electric line served local farms and communities, and service was continued during the process of relocation. Defendant points out in its brief that there was no evidence of the amount of time required to plan and design the line after the highway was staked, or of the amount or kind of material required, or of the labor and time required to relocate the poles while defendant continued to meet its public service obligations. Plaintiff points out, and contends this to be a judicial admission by defendant, that it was necessary that defendant obtain twenty-five easements where portions of the line would be relocated on private property.

Plaintiff alleged in its amended petition that the Commission had the "right, power and authority" to control the location of poles, electric transmission lines, and other equipment located on the public right of way, and that it is responsible for the re-

moval of obstructions in the right of way and for the removal of poles and electric transmission lines located there by public utilities. Plaintiff further alleged that the Commission "duly and properly notified" the defendant to remove its poles from the right of way, and that it then "became the duty of the defendant * * * to comply with the notification to remove said lines, poles and equipment," but that defendant "wrongfully and improperly failed to remove the transmission lines, poles and equipment from the construction area until the 28th day of August, 1962, * * * and by reason of the failure * * * [defendant] violated its statutory duty, Sec. 227.240 RSMo 1959 [V.A.M.S.]," and "created a public nuisance and obstruction in the public right of way," and thereby delayed and impeded plaintiff in the performance of its work to its damage in the sum of $66,258.38.

Defendant alleged that "it had no duty to the plaintiff" to remove or relocate its lines because the Commission had not properly served it, in the manner provided by Section 1.190 RSMo 1959 [V.A.M.S.], with the notice required by Section 227.240, and that the notice it did receive from the Commission did not comply with Section 227.240. Defendant further alleged that no hearing was held pertaining to the "proposed plan of relocation and matters incidental thereto concerning the lines, poles and wires" of defendant as provided in Section 227.240. The answer of the Commission will be mentioned later. Both the defendant and the Commission filed a cross-claim against the other in which each asserted that if plaintiff should recover, the other should be held solely responsible. The trial court directed a verdict against plaintiff and in favor of the Commission. Plaintiff's case against defendant was submitted to the jury, and the result was a verdict in favor of defendant.

Instruction 2, plaintiff's verdict directing instruction, was as follows:

"Your verdict must be for plaintiff and against defendant, Missouri Public Service Company, if you believe:

"First, defendent, Missouri Public Service Company maintained an electric transmission pole line in the right of way of Route 'SDD' in Harrison County, Missouri;

"Second, defendant, State Highway Commission entered into a contract with plaintiff for road improvements on the right of way of Route 'SDD' in Harrison County, Missouri, where the pole line was constructed;

"Third, the defendant, State Highway Commission gave the defendant, Missouri Public Service Company notice to move said pole line;

"Fourth, that defendant, Missouri Public Service Company had a reasonable time after receiving the notice referred to in paragraph Third to move said pole line from that part of the right of way referred to in Paragraph Second above;

"Fifth, that defendant, Missouri Public Service Company failed to move said pole line within a reasonable time after receiving the notice referred to in paragraph Third and Fourth above; and

"Sixth, that by reason of the failure referred to in paragraph Fifth above, plaintiff was damaged."

The notation at the end of the instruction, as shown in the transcript, is as follows: "M.A.I. 22.01 Modified. Plaintiff prepared given J. D."

The only instructions offered by defendant consisted of a converse of Instruction 2 and a burden of proof instruction.

Plaintiff's first point on this appeal is that it was "entitled as a matter of law to damages caused to it by reason of [defendant's] wrongful obstruction of the highway, and the court therefore erred in instructing the jury that plaintiff's right to recovery depended on [plaintiff] per-

suading the jury that [defendant] had received notice to remove the poles and had not removed them within a reasonable time following receipt of notice." Following this, in what appears to be "sub-points," plaintiff makes the following contentions:

"A. Necessity for a formal hearing before the Highway Commission did not exist in this case.

"B. Waiver of formal hearing was made manifest by action of [defendant].

"C. Particular damage resulting from public nuisance is compensable.

"D. The trial court erred prejudicially in holding that the issues of notice and reasonable time were for the jury."

Our interpretation of the above point is that plaintiff contends that under the evidence it was entitled to a directed verdict on the issue of liability, and that only the issue of the amount of damages should have been submitted to the jury.

■ We should first mention that we are unable to find from the record that plaintiff at any time requested the trial court to direct a verdict for it on the issue of liability, and the transcript affirmatively shows that the case was submitted to the jury at plaintiff's request on the issues incorporated into Instruction 2. Ordinarily a trial court is not to be convicted on appeal of error in failing to take action which was never requested. In Clay v. Owen, 338 Mo. 1061, 93 S.W.2d 914, a defendant requested and received instructions submitting his theory of the case to the jury without first questioning the sufficiency of the entire evidence to make a case for the jury. It was held that "his act in requesting the submission was voluntary," and that on appeal he would "not be heard to say that the court erred in complying with his voluntary request."

■ This principle should apply equally as well to a plaintiff who requests and receives instructions submitting his theory of the case on the issue of liability to the jury when he makes no request for a directed verdict on that issue. Also, by its point as above set out, plaintiff contends that Instruction 2 was erroneous, but plaintiff is not entitled to complain on appeal about an instruction given on its behalf at its request. Leathem v. Longenecker, Mo., 405 S.W.2d 873, 876; Brown v. Bryan, Mo., 419 S.W.2d 62.

■ Aside from the above reasons why plaintiff is not entitled to complain on appeal concerning Instruction 2, plaintiff was not entitled to a directed verdict on the issue of liability. Plaintiff's theory was that defendant "failed to move said pole line within a reasonable time" after receiving the notice of the Commission to move the poles. It may be assumed that under some factual situations what is or is not a reasonable time may be declared as a matter of law. See for example, Ex Parte Trant, 278 Mo.App. 105, 175 S.W.2d 161. However, as stated in 75 C.J.S. at p. 635, "reasonable time" is a relative and flexible term which has no precise definition, and is "an indefinite time, which may vary with the circumstances of the case, and it will vary widely in different types of cases, since what would be a reasonable time in one case might be wholly inadequate in a different case or under different circumstances." It is then stated that "what constitutes reasonable time in a particular case depends on the context and attendant circumstances, and it may depend on the nature and character of the thing to be done, considered with its purpose and the attendant facts and circumstances, such as the difficulties surrounding and attending its accomplishment and the means and ability of the persons involved." Whether defendant removed its poles in a reasonable time after notice, in view of the difficulties involved including the obtaining of necessary easements where the line was to be off the right of way, the weather, the need to maintain electric service to its customers during relocation, and all the attending circumstances, was clearly an issue for the jury,

and could not be declared as a matter of law. We note that plaintiff's argument in reply to defendant's motion for a directed verdict at the close of all the evidence was that the issues were for the jury. For the most part the attending circumstances were established by oral testimony, and it has long been the general rule that "it is the function of the jury to pass upon all oral evidence," Schaefer v. Accardi, Mo., 315 S.W.2d 230, and the "trial court is [seldom] justified in directing a verdict in favor of a party having the burden of proof where the case depends upon oral testimony." Beezley v. Spiva, Mo., 313 S.W.2d 691. We find no merit to plaintiff's first point.

Plaintiff's next point is that the verdict for defendant "is utterly lacking in tangible support and therefore should be set aside as being the result of passion and prejudice on the part of the jury."

We are of the opinion that plaintiff met its burden of proof of making prima facie proof of its theory of liability. However, a jury may find *against* a party having the burden of proof, when the issue is for the jury, even though his proof consists of uncontradicted and unimpeached evidence. Schaefer v. Accardi, supra; Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558. In this case, defendant was not required to offer any evidence to support a verdict in its favor. Superior Ice and Coal Co. v. Belger Cartage Service, Inc., Mo., 337 S.W.2d 897; Dixon v. Edelen, Mo., 300 S.W.2d 469; Wolff v. Richardson, Mo.App., 358 S.W.2d 112. Plaintiff's contention that the verdict was the result of "passion and prejudice" is based on the erroneous assumption that the verdict against the party having the burden of proof must have "tangible support" in the evidence, and therefore is without merit.

Plaintiff's third point is that the trial court erred "in denying the plaintiff the opportunity to show additional expense [on other projects] because of the delay in the Harrison County work caused by the failure to remove the poles."

In this case the verdict was for the defendant, and ordinarily in that circumstance alleged errors as to the admission of evidence pertaining only to the issue of damages are not material. However, plaintiff asserts that as a condition for finding for plaintiff, Instruction 2 required the jury to believe that "plaintiff was damaged." Also, Instruction 3, a converse instruction offered by defendant, provided that the "verdict must be for defendant * * * unless you believe * * * that by reason of the failure [of defendant to move said pole line within a reasonable time] plaintiff was damaged." Plaintiff's theory is that although the jury may have believed all the propositions submitted in paragraphs First through Fifth of Instruction 2, it may not have believed that "plaintiff was damaged," and for this reason it returned the verdict for defendant. We conclude that under the circumstances of this case, plaintiff is entitled to assert on this appeal that the exclusion of evidence on the issue of damages, if erroneous, could have affected the issue of liability. However, we reach the conclusion that the evidence was not erroneously excluded. We shall review the circumstances.

When Mr. Parsons was testifying for plaintiff, he was asked on direct examination whether plaintiff was working on projects other than the construction of Route DD, and he replied that it was and he referred to projects in Lewis and Holt Counties. When asked what occurred "in relation to the work that you had to do in Lewis County as far as your ability to perform work there," defendant objected on the ground that damages to plaintiff on other projects would constitute special damages, and that plaintiff had not pleaded special damages but had pleaded general damages only. After an extended discussion between counsel and the court, the objection was sustained. Plaintiff then moved to amend its petition to allege

special damages resulting at other projects, and this request was denied.

In plaintiff's petition reference was made only to the contract for the construction of Route DD. It was pleaded that the failure of defendant to relocate its poles on that project resulted in a public nuisance and that plaintiff was damaged. There were no allegations that plaintiff was engaged in working on other projects, and that by reason of a delay in performing the construction work on Route DD plaintiff was caused to be delayed on other projects. It is therefore clear that plaintiff's petition was limited to defendant's alleged wrongful conduct in connection with plaintiff's work in constructing Route DD, and that plaintiff alleged only general damages.

 Civil Rule 55.21, V.A.M.R., provides that "When items of special damage are claimed, they shall be specifically stated." See also, Section 509.200 RSMo 1959, V.A.M.S. General damages are those which the law would impute as the natural, necessary and logical consequence of defendant's wrongful act. Special damages are the natural but not necessary result of the wrongful act. Johnson v. Flex-O-Lite Manufacturing Corporation, Mo., 314 S. W.2d 75, 84. It has been said that the determination of what are special damages has been the source of confusion. 27 Mo.L.Rev. p. 560. However, it is clear in the case before us that damages sustained by plaintiff by reason of its inability to perform work on other projects at other places resulting from defendant's alleged wrongful acts in connection with the construction of Route DD, while perhaps a natural result, could not reasonably be considered to be a necessary and logical consequence of the wrongful acts of defendant alleged in the petition. Therefore, such items of damages are special damages within the meaning of Civil Rule 55.21, and unless they are specifically stated in the petition, plaintiff may not, over the objection of defendant, present evidence in support thereof. Smith v. Tracy, Mo., 372

S.W.2d 925, 939; Weller v. Hayes Truck Lines, 355 Mo. 695, 197 S.W.2d 657; W. C. Hardesty Co. v. Schaefer, Mo.App., 139 S. W.2d 1031; 22 Am.Jur.2d Damages §§ 270, 271.

In support of its contention that proof of "extra expense on the Lewis and Holt projects" did not constitute proof of "special damages," plaintiff cites Weller v. Hayes Truck Lines, supra, and Orr v. Williams, Mo.App., 379 S.W.2d 181. Each of these cases was a suit for damages to a vehicle, and in each it was held that damages for loss of the use of that vehicle could be recovered, and in the Weller case it was held that in the circumstances loss of use of the vehicle constituted general damages. In the Orr case there was no discussion of whether in order to recover damages for loss of use of the vehicle it was necessary to plead them specifically, but the Weller case was cited. In those two cases, loss of the use of the vehicle damaged was the necessary and logical result of the damaging. The factual situations of those two cases are not comparable to the situation before us, and do not lend support to plaintiff's position.

 Plaintiff asserts in its brief that it should have been permitted to show damages resulting on other projects at other places because "loss of profit" is a proper element of damage, and cites Fuchs v. Curran Carbonizing and Engineering Co., Mo. App., 279 S.W.2d 211, and Anderson v. Abernathy, Mo., 339 S.W.2d 817. Neither of those cases discuss the question of whether it was necessary in the factual situations of those cases to state specifically as special damages an alleged loss of profit. However, it is the general rule that "loss of business profits must be specifically pleaded in tort actions." 22 Am.Jur.2d Damages § 289. See also, W. C. Hardesty Co. v. Schaefer, supra.

We adhere to our view that damages resulting from circumstances occurring at other projects at other places allegedly resulting from the wrongful act of defend-

ant in connection with construction of Route DD, if recoverable at all, had to be specifically stated in plaintiff's petition. For these reasons, the trial court correctly sustained defendant's objection to the offer of plaintiff to prove damages on other projects at other places.

Plaintiff next asserts that the trial court abused its discretion in refusing plaintiff permission to amend its petition during trial to state specifically special items of damages.

Civil Rule 55.54, V.A.M.R., provides that "If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits."

The record shows that in preparing for its defense to plaintiff's petition defendant examined plaintiff's books in an effort to meet the contention that plaintiff had been damaged. There is an implication that defendant encountered difficulty in separating the Route DD project from the other projects. But, it is not shown that defendant made any attempt to examine the books in reference to losses sustained at other projects which might have been attributable to defendant's acts on Route DD. Defendant would have been entitled to such an examination to meet the evidence proposed by plaintiff. This was a trial before a jury, and a recess for that purpose would have not been appropriate. The trial court commented that the alleged losses at other projects "may have been proper elements to have been set forth" in the petition, but the court expressed concern that if it permitted the proposed amendment "then in effect Pandora's box is opened." Also, the trial court had attempted to work out an arrangement with counsel to have their pleadings complete in advance of the date

of trial. This effort was, of course, subject to the right of the trial court to permit subsequent amendments as authorized and directed by Civil Rule 55.54, but it does indicate that the complexity of the issues and pleadings received the attention of the trial court and the parties prior to trial.

■■■■ In Pender v. Foeste, Mo., 329 S.W.2d 656, the defendant's answer charged one plaintiff with contributory negligence but did not so charge the other plaintiff. At the end of the plaintiffs' evidence defendant sought to amend his answer by inserting an allegation of the other plaintiff's contributory negligence, and the request was refused. This court held: "Courts should be liberal in permitting amendments to pleadings, * * * but whether a particular amendment 'should be permitted is primarily within the sound judicial discretion of the trial judge, whose action will not be disturbed where * * * there is no showing that such discretion has been palpably and obviously abused.' " This is the correct test to be applied here. There were good and sound reasons for the trial court ruling as it did. It cannot be said on this appeal that the trial court abused its discretion in refusing the requested amendment in the middle of a jury trial when the normal pre-trial methods of discovery would not be available to defendant, and a continuance to permit defendant to prepare to meet the new issues would not have been practicable.

■■■ The remaining point of plaintiff pertaining to the jury verdict in favor of defendant in that "there was insufficient factual foundation for the testimony of defendant MPS's engineering witnesses as to plaintiff's cost, and this evidence was also irrelevant and prejudicial."

This point is so general that it does not comply with Civil Rule 83.05(e), V.A.M.R. It apparently refers to the testimony of two registered professional engineers, who testified as expert witnesses and whose qualifications are not challenged. Their testimony covers 130 pages in the transcript,

and its general purpose was to show that plaintiff's actual cost of construction of Route DD was not as much as it claimed, and therefore, its damages were less than asserted. The point does not state why it is contended that the testimony was "irrelevant and prejudicial," but in the argument it is asserted that the testimony was "immaterial" because whether or not "plaintiff made a profit has no bearing on MPS's liability." The evidence did pertain to the amount of damages, if any, to which plaintiff would have been entitled, so its admission was not without any materiality. Accepting as correct plaintiff's contention that this evidence had "no bearing" on the issue of defendant's liability, we need not review the matter further because in view of the defendant's verdict on the issue of liability, we need not review alleged errors not affecting that issue.

The point also does not set forth why the testimony of these two witnesses did not have "factual foundation." We speculate that reference is made to their opinion testimony. We find that the opinions expressed were based partially on personal knowledge and partially on records and reports of the Commission, pertaining to the construction of Route DD, which were business records and which had been admitted into evidence. In its reply brief plaintiff states that it does not complain about the admission of the Commission's records, "but rather to the [witnesses] unfounded assumption as to what they show." Plaintiff then says that the witnesses "knew nothing about the records, [and] should not have been allowed to speculate as to ambiguous items about which they knew nothing." We do not know what plaintiff contends to have been an "unfounded assumption" and to be "ambiguous items." If we should search the 130 pages of testimony of these witnesses in an effort to find something to support plaintiff's contention we would in effect be acting as an advocate for plaintiff, an activity outside our proper function. For the reason that plaintiff has not demonstrated how the admission of this evidence could have prejudicially affected the issue of liability, we find no merit to this point.

The remaining point of plaintiff is that the trial court erred in "sustaining the motion for directed verdict on the part of [the Commission] for the reason that it was the duty of the Commission to have the construction site ready so that plaintiff could proceed."

In argument plaintiff asserts that the Commission had the authority pursuant to Section 227.240 to compel the defendant to relocate its lines, and the duty to have the site ready for the contractor was "a normal duty of one who contracts for construction work on property he controls." Plaintiff also cites Spitcaufsky v. State Highway Commission of Missouri, 349 Mo. 117, 159 S.W.2d 647, and asserts that the Commission is liable for delays in the work caused by it or which it could have prevented by proper action under the law.

In its petition, plaintiff alleged that the Commission had the power and authority to control the location of defendant's poles in the right of way; that the Commission "is responsible for the removal of obstructions in the right of way, and particularly for the removal of poles, transmission lines and equipment located there by the public utilities using the rights of way;" and that "a long time before" plaintiff was to proceed with the work on Route DD the Commission "duly and properly notified" defendant to remove its transmission line and poles, and "it thereupon became the duty of the defendant * * * to comply with the notification to remove said lines, poles and equipment." Defendant's answer was to the effect that it owed no duty to plaintiff to move its poles because the Commission had not given it the notice required by Section 227.240, and had not otherwise complied with that statute. Plaintiff's reply was that defendant "had adequate notice as contemplated by Section 227.240, RSMo 1959 [V.A.M.S.];" that it had "waived any further requirements of notice and hearing" otherwise contemplated by Section 227.240;

and that defendant had "agreed * * * to remove [the poles] and clear the right of way, so that construction could begin upon Route SDD." In the answer of the Commission it was alleged that it notified defendant of its intention to construct Route DD; that it had given defendant a set of plans and profile sheets, and had notified it that the right of way was staked and that it could proceed to relocate its lines; and that defendant had represented to the Commission its willingness and intention to move its transmission line; and that the Commission had acted in reliance upon said representations. The Commission further alleged that the contract between it and plaintiff provided, by reference to the "Proposal" and "Standard Specifications" which were made a part of the contract "as fully as if set out therein," that plaintiff was to examine the site of the proposed work and "shall consult with the various utility owners regarding the locations and adjustments required, and determine for itself the locations of such utilities on the right of way which may affect their operations, whether or not shown on the plans," and that plaintiff should coordinate its operations with the work of the public utilities who are to remove and construct new fixtures, and that the Commission "will not be responsible for any delay or inconvenience to the plaintiff resulting from plaintiff's required cooperation and the coordination of its work with the owners of public utility facilities, nor for any inconvenience, delay or added expense to the plaintiff in working around utility facilities located on the right of way, or for the delay or added expense to the plaintiff resulting from the failure of the utility owners to remove or relocate utility facilities so that plaintiff's work may proceed on schedule." Proof of these contract provisions was made at trial, and plaintiff does not now challenge them in any way.

Plaintiff's position in its pleadings and in its submission of its case was that the Commission did all that was needed to be done by it to impose the duty on defendant to move its poles. It specifically pleaded that the Commission had "duly and properly notified defendant." See Jackson County Public Water Supply District No. 1 v. State Highway Commission of Missouri, Mo., 365 S.W.2d 553. Whether it was wise for plaintiff to have done so is not before us, but plaintiff expressly contracted with the Commission that the Commission should "not be responsible" for "the delay or added expense" to plaintiff resulting from defendant's failure to timely relocate its poles. We see no reason, and plaintiff advances no reason, why this would not be binding on plaintiff after the Commission had done all that was necessary to impose the duty on defendant to relocate its poles, and plaintiff's pleaded position was that the Commission had taken such action.

In the absence of any showing that the Commission wrongfully interfered in the performance of plaintiff's work, see Spitcaufsky v. State Highway Commission of Missouri, supra, and there is no such showing or even such a contention in this case, the record establishes that plaintiff contends that the Commission gave due and proper notice to defendant to move its poles, and that plaintiff by contract agreed that the Commission should not be liable to plaintiff for any delay or additional expense resulting from the failure of plaintiff to relocate its poles. Plaintiff has not demonstrated error on the part of the trial court in directing a verdict in favor of the Commission.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

FINCH, P. J., EAGER, J., and RANDALL, Special Judge, concur.

DONNELLY, J., not sitting.