**J. A. TOBIN CONSTRUCTION COMPANY, Plaintiff-Appellant-Respondent,**

v.

**STATE HIGHWAY COMMISSION OF MISSOURI, Defendant-Respondent-Appellant,**

and

**Kansas City Power & Light Company, Defendant-Respondent.**

**No. WD32371.**

Missouri Court of Appeals, Western District.

March 2, 1982.

Michael P. Riley, Carson, Monaco, Coil, Riley, & McMillin, P. C., Jefferson City, for plaintiff-appellant-respondent.

William H. Woodson, Gardiner B. Davis, Spencer, Fane, Britt & Browne, Kansas City, for defendant-respondent, Kansas City Power & Light Co.

Bruce A. Ring, Chief Counsel, John W. Maupin, Asst. Chief Counsel, Dan Pritchard, Asst. Counsel, Jefferson City, for defendant-respondent-appellant, State Highway Commission of Missouri.

Before SHANGLER, P. J., and DIXON and TURNAGE, JJ.

DIXON, Judge.

Plaintiff Tobin Construction Co. and defendant State Highway Commission appeal from orders of summary judgment in favor of Kansas City Power & Light Company (KCPL) on Count II of Tobin's petition for breach of contract and on the Commission's cross-claim for indemnity against KCPL. The trial court designated its order final and appealable on those summary judgments. There remains pending in the trial court Count I of Tobin's petition directed against the Highway Commission as the sole defendant.

The issue with respect to the summary judgment against Tobin on Count II of its petition against KCPL involves the construction of the contract between KCPL and the Highway Commission. The issue with respect to the propriety of the summary judgment against the Highway Commis-

sion on its cross-claim against KCPL turns on whether there remains a genuine issue of fact.

Tobin entered into a contract with State Highway Commission on July 12, 1968. Under the terms of that contract, Tobin agreed to perform construction work on Highway 435 in Jackson County. At the time the parties entered into the contract, utility facilities owned by KCPL were located within the project right of way in the vicinity of Truman Road and extended for a distance of approximately 5500 feet. This lawsuit stems from KCPL's failure to remove its facilities from the right-of-way until May 15, 1969, one year beyond the date Tobin had anticipated completing the project.

The contract between Tobin and the Highway Commission included special provision "R" concerning the removal of the utility facilities:

SPECIAL PROVISIONS

R. WORK RESTRICTION (KANSAS CITY POWER & LIGHT EASEMENT)

The Contractor is advised that the Commission and the Kansas City Power & Light Company have an agreement executed November 7, 1966, for the relocation of the utility facilities which are on the right of way .... The Kansas City Power & Light Company has taken bids for the necessary relocation work and has advised the Commission that such work would begin about May 1, 1968, and would be completed by October 1, 1968, and the company has been advised that this representation will appear in this contract. The Commission presently holds the necessary property rights under the overhead lines mentioned except for right of way tract No. 230, which is traversed by Skiles Avenue, where the fee ownership was in the Kansas City Power & Light Company subject to the agreement mentioned above. Skiles Avenue, being open, will permit the Contractor to traverse the right of way in this area until it is completely freed of the Kansas City Power & Light Company's facilities. The bidder will be furnished, upon request, with the most recent information with respect to the progress of this relocation and is advised that the Commission has directed that said relocation be completed by October 1, 1968.

Until such time as the right of way is completely freed of the existing facilities, the Contractor will be required to conduct the work withing [sic] the above defined limits in the manner necessary to insure that any facilities remaining in place at any time are properly protected from damage.

No additional compensation will be allowed for any delay, inconvenience, or added expense to the Contractor resulting from any restriction of operations which may be necessary to protect utility facilities prior to their removal from the right of way.

Tobin, in Count I, pled reliance on that provision in preparing its bid and alleged that the Commission thereby received a lower bid than it would have without the provision. Tobin further alleged that the Commission issued a "Notice to Proceed" [with construction] on August 12, 1968, requiring Tobin to complete its work within 260 working days and Tobin was thereby subjected to the imposition of liquidated damages for its failure to complete the project within that time period.

The Commission asserted that Special Provision "R" did not give Tobin the right to assume the facilities would be removed by October 1, 1968. The provision was intended to notify plaintiff that until the facilities were removed, "plaintiff would be required to conduct the work within the area involved in a manner to insure that any remaining facilities in place would be properly protected from damage, and that no additional compensation would be allowed to plaintiff for any delays, inconvenience, or added expense" due to the presence of the facilities. The Commission admitted that Tobin was subjected to the imposition of liquidated damages, but asserted that working days were not counted against Tobin "during the time that utility facilities prohibited work by plaintiff." The Com-

mission further alleged that "plaintiff did not properly and satisfactorily coordinate the various stages of the work under the contract which could have and should have been performed prior to the relocation of the utility facilities and, therefore, plaintiff's own operations delayed the final completion of the project."

The Commission does not dispute that KCPL failed to remove its facilities and Tobin was delayed in gaining unrestricted access to the worksite. The Commission refers to provision 8.5.4 which was incorporated in the contract between Tobin and the Commission in denying liability. It is in relevant part as follows:

> The Commission will not be responsible for any delay or inconvenience to the contractor resulting from the contractor's required cooperation and the coordination of his work with the work of owners of utility facilities or other properties; nor for any inconvenience, delay or added expense to the contractor in working around utility facilities located on right-of-way; *or for delay or added expense to the contractor resulting from the failure of the utility owners to remove or relocate utility facilities so that the contractor's work may proceed on schedule.* When the failure of the owners of utility facilities to cooperate and coordinate their work with that of the contractor results in actual delay to the contractor in the over-all completion of his work, such delay will be considered in the count of working days or date specified for completion, provided the contractor notifies the engineer in writing of the delay at the time it occurs. (emphasis supplied).

It is the Commission's position in the pleadings that the situation at the worksite is specifically provided for by that provision.

Tobin denied that it is barred from recovery because of provision 8.5.4.

In Count II of its petition, Tobin reiterated the essential allegations of Count I. Tobin also asserted it was a third party beneficiary of a contract between the Commission and KCPL regarding the relocation and removal of the utility facilities. Tobin

pled the existence of a contract between the Commission and KCPL, executed on July 1, 1966 in which KCPL agreed to remove its utility facilities from the project's right of way. Under the terms of that agreement, according to Tobin, the Commission gave KCPL formal notice on November 14, 1966. KCPL agreed to begin the removal of its facilities about May 1, 1968 and to complete the removal by October 1, 1968. Tobin further alleged that KCPL was advised that the Commission would warrant to Tobin that the utility facilities would be removed from the right of way by October 1, 1968.

The Commission, in response to Count II, admitted the existence of a July 1, 1966 contract in which KCPL agreed to the removal of its facilities and does not dispute Tobin's assertions concerning the formal notice given to KCPL and the company's agreement to complete the utility removal by October 1, 1968. The Commission denied that it warranted to Tobin that the facilities would be removed by October 1, 1968, but admitted that the Commission advised KCPL that a provision would be included in the highway construction contract advising bidders of KCPL's agreement to relocate the facilities "on or before October 1, 1968." The Commission further denied that Tobin was a third party beneficiary of that agreement and asserted that the purpose of the contract with KCPL was to clear the construction area of facilities which interfered with the construction of the highway.

KCPL denied the existence of a July 1, 1966 contract with the Commission and Tobin's allegations as to the formal notice given by the Commission and KCPL's subsequent agreement to complete the utility removal by October 1, 1968. The company denied that it was advised that the Commission would warrant to Tobin that the facilities would be removed by October 1, 1968 and denied that Tobin was a third party beneficiary.

KCPL asserted that it entered into certain "utility agreements" with the Commission on November 1, 1966 and December 21, 1967 providing for the relocation of its utility facilities. The agreements are virtually

identical, according to KCPL, but the November 7, 1966 contract relates to distribution lines and the December 21, 1967 contract relates to transmission facilities. Although KCPL asserted that it attached the first agreement, only the December 21, 1967 contract is included in the record. No contract dated July 1, 1966 appears in the record. The petition of Tobin refers to such a contract as "Exhibit A" attached to the petition but it is not in the record.[1]

In the December 21, 1967 agreement, KCPL agreed to "adjust certain facilities now located partly on private easement" and specifically agreed that:

> (1) Company's facilities which will be relocated and rebuilt include distribution lines which are essential for Company to keep in operation, in order to furnish continuous electrical service to Company's customers serviced by said lines. Commission agrees that it may be necessary for Company to acquire fee simple title to certain pieces of real property in order to obtain said right-of-way, and, therefore, the phrase "right-of-way" shall include such real property acquired by Company for its relocated facilities. Commission therefore agrees that Company may maintain such facilities in their existing locations until such time as Company shall have acquired new right-of-way and shall have built new sections of distribution lines in place of said existing facilities. Company agrees that immediately after it has acquired said new right-of-way, has completed construction of new sections of distribution facilities to take the place of said existing facilities, and has cutover electrical service to said new relocated facilities, Company will release to Commission all right, title and interest of Company in and to the right-of-way and real estate upon which its said distribution facilities are presently located, by separate instrument in the form of Exhibit D attached hereto and made a part hereof.

The agreement further provided:

Commission and Company agree that it may be necessary for Company to institute and complete condemnation proceedings under the power of eminent domain in order for Company to acquire necessary rights-of-way for its relocated distribution lines on private land. Commission also realizes that some of said condemnation proceedings and awards of condemnation commissioners may be appealed by land owners or by Company, resulting in Circuit Court jury trials involving the valuation of said easements, and that there is a possibility that one or more of said condemnation proceedings may be appealed to and finally decided in an appellate court. Company agrees to use its best efforts to obtain said right-of-way easements at reasonable prices from private land owners, although Company may first attempt to obtain the rights to so purchase at reasonable prices, and to institute and prosecute condemnation proceedings whenever, in Company's reasonable judgment, right-of-way cannot be secured except through such proceedings, or to purchase the fee simple to real property when the same cannot, in Company's reasonable judgment, be so obtained.

KCPL asserts that it was not liable "... to the Commission or anyone else, unless, after it acquired the right of way for the relocation of the facilities, it failed to proceed '... without unnecessary delay to make the changes in its facilities ....'" The right of way was acquired on January 9, 1969, and the removal of the facilities was completed by May 14, 1969. In view of those facts, KCPL asserts there was no unnecessary delay.

The Commission cross-claimed against KCPL, asserting that under the "utility Agreement," KCPL was "to accomplish the relocation of its said facilities within a reasonable time after the receipt of notice from the District Engineer of the defendant, State Highway Commission." The Commission gave KCPL a formal notice to

---

1. From references in the pleadings, it is apparent there were "interrogatories" and "requests for admissions," none of which appear in the record presented here.

proceed with the relocation on December 14, 1966 and on April 8, 1968 gave another formal notice advising KCPL to complete the relocation by October 1, 1968. The Commission asserted that, if Tobin "has incurred any damage ... such damage is not the fault of defendant, State Highway Commission, but is the fault of defendant, Kansas City Power and Light Company ...." The Commission alleged that KCPL should be held liable in the event that Tobin recovers damages against the Commission.

KCPL answered the Commission's cross-claim and Tobin's petition separately and moved for dismissal of both claims against KCPL on the ground that each failed to state a claim for which relief could be granted.

On October 30, 1980, the trial court denied the Commission's Motions for Summary Judgment as to Counts I and II of plaintiff's petition and ordered Summary Judgment in favor of KCPL as to Count II of plaintiff's petition and as to the Commission's cross-claim. Tobin's Motion for Partial Summary Judgment against the Commission on Count I as to liability was not ruled on.

The record on this appeal is far from precise in delineating factually the legal issues which the parties present in the briefs. Before addressing those issues, it will be necessary to recast the confusing welter of allegations in the pleadings in the light of the principles of review applicable to summary judgment proceedings.

The first issue to be so considered is the contract between KCPL and the Highway Commission. Tobin's pleaded claim of a July 1, 1966 contract admitted by the Highway Commission was met by the claim of KCPL that there were two such contracts under date of November 1, 1966 and December 21, 1967. The 1967 contract is part of the record. KCPL asserts that in relevant part these contracts are identical and that assertion is not challenged in any fashion. Moreover, KCPL has asserted that by discovery, pleading, and affidavit the contracts attached to its pleadings are the contracts in issue. No contrary assertion by

pleading, affidavit, or suggestion is made by either the Highway Commission or Tobin. Tobin in the fact portion of its brief refers to the December 21, 1967 document as the "agreement referred to in Special Provision R."

For the purpose of considering the single issue presented by the Tobin appeal, the agreement of December 21, 1967, is taken to be the substantive agreement between KCPL and the Highway Commission.

The singular point asserted by Tobin, on its appeal challenging the entry of summary judgment against it on its Count II, is that as third party beneficiaries, KCPL owed them contractual duties which were breached causing Tobin damage.

■ In the briefing on this issue, Tobin and KCPL join issue first on whether Tobin was a third party beneficiary under the agreement. The parties view as central to this dispute the effect of *J. Louis Crum Corp. vs. Alfred Lindgren, Inc.*, 564 S.W.2d 544 (Mo.App.1978). Tobin argues *Crum* required they be given status as third party beneficiaries and KCPL contra. In the posture of this case, that issue need not be decided, but may be subsumed. Even if, for the purposes of decision, it is assumed that Tobin is a beneficiary of the KCPL agreements with the State Highway Commission, no error on the part of the trial court appears. There is no doubt that Tobin takes the agreement as it appears. There is no allegation by Tobin that the matters contained in Special Provision R were contractual as between KCPL and the Highway Commission. Tobin does not assert by pleading or proof an amendment or change in the basic contract. The basic contract in literal language dispels any obligation by KCPL to remove its lines until after the acquisition of right-of-way was completed. The unchallenged affidavit offered by KCPL says this did not occur until January 9, 1969. Tobin does not assert in any way a claim that thereafter KCPL unreasonably delayed removal. When a contract is unequivocal on its face, summary judgment is appropriate. *Phillips v. Atlantic Richfield Co., Inc.*, 605 S.W.2d 139, 141

(Mo.App.1979). Upon the theory pleaded and briefed in this court, Tobin has shown no right to recover under the agreement between KCPL and the Highway Commission. The trial court properly entered summary judgment against Tobin on Count II of its petition as against KCPL.

On the appeal of the Highway Commission asserting error in entering summary judgment on its cross-claim against KCPL, a different issue is presented. On that branch of this appeal, the Highway Commission argues that there remain disputed issues of fact on the theories advanced by the cross-claim. The same difficulty plagues the issue here as in the analysis above. The Commission pleaded a contract with KCPL dated July 1, 1966, and KCPL asserts the contract was of a later date. For the same reasons set forth above, the contracts as pleaded by KCPL of December 21, 1967, must be taken as the effective agreements. The Highway Commission offers two theories for its possible recovery on the cross-claim.

The first of these theories advanced in the brief of the Highway Commission is the contractual theory that KCPL and the Highway Commission entered into a modification of the agreement in which KCPL agreed to the completion date specified in Special Condition R. The second theory is that denominated by the Highway Commission as the "non contractual theory," not further explicated but for the citation of *Parsons Construction Co. v. Missouri Public Service Co.*, 425 S.W.2d 166 (Mo.1968), and *Missouri Pacific RR Co. v. Whitehead and Kales Co.*, 566 S.W.2d 466 (Mo.banc 1978). What is perhaps intended on this theory is a recovery based upon the concept developed in *Aluma Kraft Manufacturing Co. v. Elmer Fox and Co.*, 493 S.W.2d 378 (Mo.App. 1973) and Restatement of Torts (Second) § 552 (1964) providing for tort liability when a representation is negligently made and a third party relies upon it to his damage.

The difficulty with all of the tendered theories is that there is no pleading to support any of them. There is no pleading by the Highway Commission asserting that KCPL agreed to the completion date set forth in "Special Condition "R"." Nor is there any pleading that asserts KCPL made any representation such as is included in Special Provision "R." The cross-claim pleads the "contract," the notices to remove, and a failure to remove by October 1, 1968. The cross-claim was quite apparently predicated upon the proposition that the Highway Commission had a right to compel removal of utility structures upon its right of way. *Parsons, supra.* That is not the case here. KCPL *owned* the right of way for its lines and the Highway Commission could have forced removal only by condemnation. The contract between KCPL and the Highway Commission specifically recites that the contract was entered into to avoid that condemnation proceeding.

When KCPL by its pleading of the contract vitiated the theory advanced by the Highway Commission's pleadings and moved for summary judgment, the Highway Commission could not stand on those pleadings. It was incumbent on the Commission to assert by pleading or affidavit any facts or theories to provide a basis for denial of the summary judgment. *E. O. Dorsch Electric Co. v. Plaza Construction Co.*, 413 S.W.2d 167, 170 (Mo.1967).

In short, the Highway Commission has offered no pleading or factual assertion for a reversal of the trial court's order upon the basis of the existence of disputed facts under the pleadings and record here presented. The judgment of the trial court entering summary judgment against the Highway Commission was correct.

The judgment of the trial court is affirmed, and the cause is remanded for further proceedings on Count I of plaintiff's petition.

All concur.