George HENSIC and Jeanette Hensic, His Wife, Plaintiffs-Respondents,

v.

AFSHARI ENTERPRISES, INC., d/b/a Missouri Real Estate Company and Missouri Construction Company, Defendant-Appellant.

No. 40653.

Missouri Court of Appeals, Eastern District, Division Four.

May 13, 1980.

Cupples, Cooper & Haller, Inc. by Albert J. Haller, Clayton, for defendant-appellant.

Rollings, Gerhardt & Hazelwood by Keith W. Hazelwood, St. Charles, for plaintiffs-respondents.

SATZ, Judge.

Defendant, Afshari Enterprises, Inc., d/b/a Missouri Real Estate Company and Missouri Construction Company (Afshari), contracted to build a house for plaintiffs, George Hensic and Jeanette Hensic (Hensics). In a three count petition, the Hensics sued Afshari for breach of contract, breach of implied warranty and misrepresentation based upon alleged defects in construction. At the close of the Hensics' case, the trial court directed verdicts against the Hensics on the warranty and misrepresentation counts. The cause was submitted on breach of contract and the jury awarded the Hensics $25,000.00 as damages. Afshari appeals. We affirm.

By written contract entered into in July, 1973, Afshari agreed to construct a five-bedroom, two-car, custom house, according to specifications, and agreed to sell the house to the Hensics for $51,950.00. In December, 1973, the Hensics occupied the house. During their early occupancy, the Hensics requested Afshari to correct some defects and it did so. However, at final disbursement, the Hensics notified the mortgage lender that the house was not completed to their satisfaction because certain items of construction were not completed. The Hensics did not sign a certificate of completion and brought suit against Afshari.

The cause was tried in March, 1978. At trial, an architect, hired by the Hensics to inspect the house, testified that he found 31 deficiencies in construction. Without objection, an appraiser hired by the Hensics testified that, if the house had been constructed in a workmanlike manner, the land and the house would have been worth $71,600.00 in July, 1973. According to him, the loss in value in 1973 due to the construction defects would have been $16,700.00. He also testified that, if the house were constructed in a workmanlike manner in December, 1977, the value of the house and land, at that time, would have been $92,100.00, while its value as actually constructed would have been $69,800.00, reflecting a loss in value of $22,300.00. A general contractor also testified on behalf of the Hensics. He inspected the house in February, 1976. Over Afshari's objections to any testimony about the cost of repairs, he testified that, at the time of his inspection, the cost of repairs of the 31 noted deficiencies, including overhead and profit, would be $33,716.65, or $27,061.65 if one defect were fixed by an alternative method of construction. In addition, he testified, at the time of trial, these costs would have increased by

15 percent to 20 percent.[1] George Hensic testified about the loss of use and enjoyment of his property due to the alleged defects.

The Hensics submitted M.A.I. 4.01 as the proper damage instruction, which was refused by the trial court. Instead, at Afshari's request, the court gave a modified M.A.I. 4.02, which measured the Hensics' damage by the difference in the fair market value of the house as promised and as constructed.[2]

Afshari raises four points on appeal, all of which are centered on the issue of damages. Afshari contends that the trial court erred by (1) permitting the Hensics' contractor to testify about the cost of repairs; (2) permitting the Hensics' counsel to argue that the proper measure of damages in this case was the cost of repairs; (3) "entering an excessive judgment", based upon "improperly" admitted evidence of the cost of repairs and upon an "improper" argument of the Hensics' counsel that the cost of repairs was the correct measure of damages; and (4) permitting the Hensics' counsel to incorrectly state, in his closing argument, the unsupported fact that Joseph Afshari, Afshari's president, signed a building permit application listing the construction costs as some $16,000.00 less than the contract price.

In our review, we take the trial record as it stands and so must Afshari's present counsel on appeal. We address only those issues properly preserved for review, and we find none of Afshari's assertions of error were preserved for our review.

■ As noted, Afshari first contends that the evidence of the cost of repairs was improperly admitted. This issue was not raised in Afshari's motion for a new trial, and, thus, is not preserved for review. Rule 78.07; *Ramacciotti v. Zinn*, 550 S.W.2d 217, 223 (Mo.App.1977); *Cato v. Modglin*, 545 S.W.2d 307, 309 (Mo.App.1976). Moreover, had Afshari preserved this issue, it still would not have prevailed. When a building contractor breaches his contract by defective performance, as Afshari allegedly did here, two methods are commonly used to measure the resulting damages.[3] One method, called "cost of repair" is, as its name implies, the cost of repairing the defective work. *5 Corbin, Contracts*, § 1089 (1964); *Restatement of Contracts*, § 346(1)(a) (1932). The second method, called "diminution in value", is the difference between the value of the building as promised and its value as actually constructed. *See Kahn v. Prahl*, 414 S.W.2d 269, 282–283 (Mo.1967); *Hotchner v. Liebowits*, 341 S.W.2d 319, 332 (Mo.App.1960). The particular facts of each case determine which measure of damages is to be used. *Kahn v. Prahl, supra; Hotchner v. Liebowits, supra; accord, Forsythe v. Starnes*, 554 S.W.2d 100, 109 (Mo.App.1977); *and see* M.A.I. 4.02, *Committee's Comment*.[4] Thus,

---

1. Afshari's appraiser testified that, if the Hensics' defects did exist, these defects would have lowered the value of the house by $1,000.00 as of January, 1978.

2. M.A.I. 4.01, offered by the Hensics, states: "If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe [they] sustained and [are] reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence."

M.A.I. 4.02, as modified and given, states: "If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you may find from the evidence to be the difference between the fair market value of the residence as constructed and its fair market value had it been constructed in compliance with the contract plus such sum as you may find from the evidence will fairly and justly compensate the plaintiff for the loss of the use thereof until such property could reasonably be repaired or replaced."

3. The Hensics' alleged theories of breach of warranty and misrepresentation were still in issue at this point in the trial, but a discussion of the measure of damages required by these theories is neither essential nor necessary to this opinion.

4. Generally, compensation for tort damages attempts to restore the injured party "to the position he would be in if the [tort] had not been committed. In the case of a breach of contract, the goal of compensation is not the mere restoration to a former position, as in tort, but the awarding of a sum which is the

it was proper for the Hensics to elicit testimony both as to the cost of repairs and as to the diminution in value of the property in question. *Delong v. Broadston*, 272 S.W.2d 493, 497 (Mo.App.1954); *compare, DeArmon v. City of St. Louis*, 525 S.W.2d 795, 800–801 (Mo.App.1975). Defendant's appropriate remedy may have been to request a withdrawal instruction on the evidence related to the cost of repairs. *Beaty v. N. W. Electric Power Cooperative, Inc.*, 296 S.W.2d 921, 925 (Mo.App.1956). We rule against Afshari on this point.

 Afshari next contends the Hensics' counsel misstated the law in his closing argument by urging that the proper measure of damages in this case was the cost of repairs. No objection was made to this statement during closing argument, and this issue was not raised in Afshari's motion for a new trial. Thus, this point has not been preserved for review. *Vaeth v. Gegg*, 486 S.W.2d 625, 631 (Mo.1972); *Coffel v. Spradley*, 495 S.W.2d 735, 740 (Mo.App. 1973). Afshari argues the trial court committed plain error in permitting these alleged improper comments to be made in closing argument. However, the doctrine of plain error may not be invoked to cure mere failure to make a proper and timely objection to the trial court. *Goodman v. Firmin Desloge Hosp.*, 540 S.W.2d 907, 917 (Mo.App.1976). Moreover, we find that no manifest injustice or miscarriage of justice resulted from this isolated statement by the Hensics' counsel in his closing argument. Rule 84.13(c); *see, e. g., Blevins v. Cushman Motors*, 551 S.W.2d 602, 616 (Mo. banc 1977). The instruction on damages submitted by Afshari and given by the court, M.A.I. 4.02, as modified, measured the Hensics' damages not only by the diminution in value of the property but, also, additionally, by "such sum as [the jury] may find from the evidence will fairly and justly compensate [the Hensics] for the loss of the use thereof until such property could reasonably be repaired or replaced". The Hensics' appraiser testified that the diminution in value of the property at the time of trial was $22,300.00,[5] and, without objection,

---

equivalent of performance of the bargain—the attempt to place the [injured party] in the position he would be in if the contract had been fulfilled." *McCormick, Damages*, § 137, p. 561 (1935).

However, in Missouri, we seemingly use the same rules to determine whether "cost of repair" or "diminution in value" is to be applied to measure damages to real property, regardless of whether the damages were caused by tort or breach of contract. *Kahn v. Prahl*, supra, (breach of contract); *Curtis v. Fruin-Colnon Contracting Co.*, 253 S.W.2d 158 (Mo. 1952) (tort). Additionally, in breach of contract cases, the rules for choosing the proper measure of damages have been variously defined, which leads to some imprecision and apparent inconsistency in choosing as well as in applying the proper measure of damages. *See Kahn v. Prahl, supra* at 282–283; *Ribando v. Sullivan*, 588 S.W.2d 120, 125 (Mo.App. 1979); *Forsythe v. Starnes, supra* at 109; *Hotchner v. Liebowits, supra* at 332; *Samuels v. Illinois Fire Ins. Co.*, 354 S.W.2d 352, 356–358 (Mo.App.1961).

In the present case, we need not and do not reach a determination of the correct rule for deciding whether the damages must be measured by the "cost of repair" or the "diminution in value"; nor do we intend any implied comment on what factors are relevant and determinative in deciding which of these two methods of measuring damages is to be used in a given fact situation.

5. M.A.I. 4.02, as modified and given, requires the diminution in value of the property to be determined by the difference in the property's value as promised and as constructed. This instruction, like M.A.I. 4.02 unmodified, does not explicitly confine this determination to a specific time period. However, diminution in value of real property due to tortious injury is determined by the difference in its value *immediately* before and *immediately* after the tort. *See Misch v. C. B. Contracting Co.*, 394 S.W.2d 98, 101 (Mo.App.1965). Arguably, this time frame may be appropriate for measuring damage caused by a breach of a building contract, *see Hotchner v. Liebowits, supra* at 332, and, recently, our colleagues in the Western District have held that, in a breach of contract case, the value of the building as constructed *must* be determined at the time of the alleged breach. *Ribando v. Sullivan, supra* at 125. As noted in the body of this opinion, Hensics' appraiser testified to the diminution in value of the property both at the time of the alleged breach and at the approximate time of trial without objection. Understandably, perhaps, Afshari does not question the time period for determining diminution in value and, thus, we do not consider the propriety of this issue or its effect on the present record.

plaintiff George Hensic testified, in detail, as to the loss of use and enjoyment of his property because of the alleged defects. The latter evidence, being part of the record, could have been considered by the jury as relevant to the additional damages the Hensics would incur due to the loss of use and enjoyment while the alleged defects were being repaired. On the present record, we cannot find the jury's verdict of $25,000.00 was manifestly unjust. We rule against Afshari on this point.

■ Afshari also argues that the verdict was excessive because it was based upon evidence of the cost of repairs, which, according to Afshari, was an improper measure of damages, and because the verdict was based upon a misstatement by Hensics' counsel in his closing argument that the cost of repairs was the proper measure of damages. Although stated differently, this contention is basically the same contention just discussed and our ruling is the same. However, even if we assume this contention differs from Afshari's immediately preceding contention, Afshari did not preserve this contention for review. In its motion for a new trial, Afshari did complain that the verdict was excessive, but the reasons urged in its motion for a new trial are not the reasons it presently argues on appeal. In its motion for a new trial, Afshari argued that the verdict was excessive because the Hensics had consented to the deviations from the original contract and that the correct measure of damages was the $1,000.00 that Afshari established by the testimony of its appraiser. Since Afshari's claim of error on appeal differs from its claim in its motion for a new trial, its claim on appeal is not preserved for our review. *Galovich v. Hertz Corp.*, 513 S.W.2d 325, 332 (Mo.1974); *Boten v. Brecklein*, 452 S.W.2d 86, 96 (Mo.1970). We rule against Afshari on this point.

■■ Finally, Afshari contends that the Hensics' counsel made another improper statement in his closing argument. More specifically, Afshari contends that the Hensics' counsel improperly stated that Afshari's president, Joseph Afshari, had signed a building permit application which listed the construction costs at a figure $16,724.00 lower than the contract price, when there was no evidence to support the fact that Mr. Afshari had signed the application. No objection was made to this statement during closing argument. Afshari did raise this issue as plain error in its motion for a new trial. However, generally, failure to object to an argument at the time counsel is addressing the jury results in a waiver of any rights to complain about the argument on appeal, *Wilborn v. Williams*, 555 S.W.2d 44, 46 (Mo.App.1977), because the trial court must be given an opportunity to take corrective action to cure any prejudicial effect of an erroneous argument. *Triplett v. St. Louis Pub. Serv. Co.*, 373 S.W.2d 515, 521 (Mo.App.1963). Thus, an issue based upon an alleged erroneous closing argument is not preserved if raised for the first time in a motion for a new trial. *Wilborn v. Williams, supra.* Nonetheless, under the doctrine of plain error, the issue still may be considered in a motion for a new trial or on appeal when the unobjected to erroneous argument caused manifest injustice or a miscarriage of justice. *Kallenbach v. Varner*, 502 S.W.2d 446, 449 (Mo.App.1973); Rule 84.13(c). Although Afshari urged the trial court to consider its final contention under the doctrine of plain error and now urges us to apply this doctrine on appeal, we decline to do so. The doctrine is applied only if a closing argument contains reckless assertions, unwarranted by proof and intended to arouse prejudice, which, therefore, may be found to have caused a miscarriage of justice. *Pappas v. Bi-State Development Agency*, 565 S.W.2d 475, 476 (Mo.App.1978). The doctrine may not be invoked to cure the mere failure to make proper and timely objections. *Birmingham v. Coen*, 320 S.W.2d 509, 510 (Mo.1959).

We find this comment about the application for a building permit, made during closing argument, did not cause manifest injustice or a miscarriage of justice. As we previously stated, on the present record we cannot find the jury's verdict manifestly

unjust, and, thus, we do not find that this comment of the Hensics' counsel deprived Afshari of a fair and impartial trial.

Accordingly, the judgment is affirmed.

SMITH, P. J., and ALDEN A. STOCK-ARD, Special Judge, concur.