**Guadalupe HERNANDEZ and Wilma Hernandez, his wife, Plaintiffs/Appellants,**

v.

**WESTOAK REALTY & INVESTMENT, INC., Defendant/Respondent.**

**Guadalupe HERNANDEZ and Wilma Hernandez, his wife, Plaintiffs/Respondents, and Cross–Appellants,**

v.

**CUSTOM BUILDERS CORPORATION, Defendant/Appellant, and Cross–Respondent.**

No. 53922.

Missouri Court of Appeals, Eastern District, Division Four.

May 30, 1989.

Clinton B. Roberts, Geoffrey L. Pratte, Farmington, for Guadalupe and Wilma Hernandez.

David L. Colson, Thomas L. Ray, Jr., Farmington, for Westoak & Custom Builders.

SATZ, Judge.

Seventeen years ago, plaintiffs, Guadalupe and Wilma Hernandez (Hernandezes), contracted with defendant Custom Builders Corporation (Custom Builders) for Custom Builders to build the Hernandezes the "shell of a home". The Hernandezes financed the construction loan for the shell by executing a promissory note to defendant Westoak Realty and Investment, Inc. (Westoak), secured by a deed of trust on the land on which the shell was to be built. These transactions spawned litigation which has continued until today and includes three prior trips to this Court, *Hernandez v. Westoak Realty & Inv., Inc.*, 549 S.W.2d 906 (Mo.App.1977) (Hernandez I); *Hernandez v. Westoak Realty & Inv., Inc.*, 585 S.W.2d 548 (Mo.App.1979) (Hernandez II); *Westoak Realty & Inv., Inc. v. Hernandez*, 682 S.W.2d 120 (Mo.App.1984) (Hernandez III).

The present appeal is the consolidation of three appeals taken from two cases which were tried as a consolidated case below. The two cases tried were the Hernandezes' suit against Custom Builders for damages and their suit against Westoak for a declaratory judgment that any action on the deed of trust is barred, and for a cancellation of the note and a release of the lien. After a jury waived trial, the court awarded the Hernandezes damages and prejudgment interest against Custom Builders in the former suit and entered judgment in favor of Westoak in the latter suit. Both Custom Builders and the Hernandezes appeal from the damages award, and the Hernandezes appeal from the judgment in favor of Westoak. We reverse in part and affirm as modified.

The Hernandezes purchased land in Ste. Genevieve County in 1969. In 1972, they contracted with Custom Builders to build a shell of a house on the land. The Hernandezes were to act as their own general contractor and were responsible for the excavation, foundation and "finishing work" on the house. The price for construction as specifically expressed in the contract was $12,498. Custom Builders' work was to be done in the "best workmanlike manner." The Hernandezes were away from the area for three weeks just after the contract was signed. When they returned they found the excavation done and the foundation poured. This work was done without their authorization.

Custom Builders, however, proceeded to erect a shell on the foundation. Construction stopped sometime in August 1972. Apparently, most of the shell was then in place. According to Mr. Hernandez, defects in the construction made the house uninhabitable. Mr. Hernandez along with the Hernandezes' then attorney met two of Custom Builders' "representatives"[1] at the site to discuss the defects. After that meeting, the Hernandezes signed a voucher authorizing Westoak to pay Custom Builders $11,898 from the Hernandezes' construction loan.[2]

The Hernandezes remained dissatisfied with Custom Builders' work. They sued Custom Builders in two counts. The theory of Count II was a breach of implied warranty of habitability. The court found for Custom Builders on that count and the Hernandezes do not appeal from that.

At trial, Mr. Hernandez testified that the defective construction of the shell caused him to incur expenses for rental of a house

---

1. The two representatives of Custom Builders were James Sauter, a member of the boards of both Custom Builders and Westoak, and William McGinnis, president of both Custom Builders and Westoak.

2. The voucher indicated that $11,898 was being disbursed on a contract of $12,398, with $500 being due. There is no explanation in the record for the change in the contract price from $12,498 to $12,398.

to live in, for appraisals and estimates of the costs of repairing the shell and for the cost of tearing down the shell. The court entered a judgment of $12,398.00 and pre-judgment interest in favor of the Hernandezes on Count I. The exact theory of Count I is in issue in this appeal.

### Custom Builders' Appeal of the Damages Award

Custom Builders attacks this judgment for damages in favor of the Hernandezes on four grounds. Two have merit.

■ Custom Builders argues the proper theory of a home buyer for recovery caused by defective construction sounds in contract, not tort. The Hernandezes' theory in Count I of their petition, Custom Builders argues, sounds in negligence, not contract; therefore, Custom Builders argue, the Hernandezes failed to state a claim upon which relief can be granted. We disagree.

Custom Builders may, as it does, raise this issue for the first time on appeal. Rule 55.27(g)(2); *Commercial Bank of St. Louis County v. James,* 658 S.W.2d 17, 21[1] (Mo. banc 1983). Custom Builders, however, reads the Hernandezes' allegations too narrowly. The Hernandezes allege the existence of the contract requiring Custom Builders to do the the carpentry work "in the best workmanlike manner" and also allege specific defects which reflect the "unworkmanlike manner" in which the "construction work" was done. However, in addition, the Hernandezes allege several types of specific damages, each allegedly caused by "the negligent and defective construction of the house by ... Custom Builders...." It is the use of the term "negligence" and its juxtaposition with "defective construction" which leads Custom Builders to read the allegations as sounding in tort. We read the allegations differently.

The Hernandezes' allegations may not be a model of precision. However, they can be understood. We read them liberally but reasonably. *See, e.g., U.S. Suzuki Motor Corp. v. Johnson,* 673 S.W.2d 105, 106[1] (Mo.App.1984). Rather than stating a claim in tort, they simply reflect the legal mind's long, lasting love affair with redundancy. As used, the term "negligence" is just another way of saying "defective construction." The basis of the allegations is still Custom Builders' "unworkmanlike" performance. "Negligence" and "defective" are simply used to repeat and mean such an "unworkmanlike" performance that it constitutes a breach of contract. The essential thrust and the approach to damages is, nonetheless, a contract one.[3]

■ Custom Builders, however, has another string to this bow. Even if the count sounded in contract, Custom Builders argues, the allegations still fail to state a claim because there is no allegation of the performance by the Hernandezes of the conditions precedent essential to their claim. This argument is misdirected and, thus, misses the mark.

■ If a contract requires the performance of a condition by one party in order to trigger the duty of the other party to perform, the latter cannot be in breach of his duty until the former performs the condition or has a sufficient excuse for the non-performance. Thus, it has been said:

'performance of a condition precedent must be alleged or an excuse given for its non-performance to make the pleading [for breach of contract] a good one'

*State ex rel. MFA Ins. Co. v. Murphy,* 606 S.W.2d 661, 663[1] (Mo. banc 1980). That principle, however, is not applicable here.

Simply stated, in the contract here, the Hernandezes promised to pay Custom Builders for building the shell of a house in a workmanlike manner. There was no condition the Hernandezes had to perform before the duty of Custom Builders was triggered. To the contrary, the Hernandezes had no duty to pay until Custom Builders fulfilled its duty. The Hernandezes' allegations properly reflect this legal relationship.

---

**3.** The use of "negligence" to characterize the conduct constituting a breach of contract is not unusual in other contract cases. See Dobbs, *Remedies,* § 12.3, p. 807 n. 41 (1973).

*U.S. Suzuki Motor Corp., supra,* 673 S.W.2d at 106[3].

■ Custom Builders also contends an accord and satisfaction was reached precluding any right of the Hernandezes to damages. The record does not support this contention.

We review the facts in this court tried case under the well known principles of *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976). We defer to the trial court's determinations of credibility, view the evidence and permissible inferences most favorably to the judgment and disregard all contrary evidence and inferences. *See, e.g., Snowden v. Gaynor,* 710 S.W.2d 481, 483 (Mo.App.1986).

So viewed, the operative facts supporting this argument are: Mr. Hernandez, the Hernandezes' then attorney, Custom Builders' president and a member of its board met at the site to discuss a list of construction defects prepared by the Hernandezes; subsequent to that meeting the Hernandezes signed a voucher authorizing Westoak to release $11,898 to Custom Builders; this payment was less than the contract price for the shell.

Custom Builders, however, fails to consider the testimony of both of the Hernandezes that no settlement was reached. The trial court, apparently, credited this testimony and interpreted the noted operative facts in light of this credited testimony. We defer to the trial court's determination of credibility, *St. Charles County v. McPeak,* 730 S.W.2d 611, 612[1] (Mo.App. 1987), and find it reasonable for the court to have implicitly interpreted the operative facts as failing to show an accord and satisfaction.

Custom Builders next contends the proper measure of damages for the defective performance of a building construction contract is either the cost of repairing the defects in the construction or the diminution in value of the building caused by the defects. Neither of these measure of damages, Custom Builders contends, was pled or proved by the Hernandezes; therefore, Custom Builders argues, the award of damages made was improper. We agree the award was improper but for different reasons.

■ The goal in awarding damages for breach of a building construction contract, no different than the goal in the breach of most contracts, "is to award a sum that will put the non-breaching party in as good a position as he would have been had the contract been performed." Dobbs, *supra,* §§ 12.1, 12.21. Most often, this goal is achieved by awarding the non-breaching party damages representing the kind of damages most non-breaching parties would suffer in similar circumstances and by adding items of consequential damages which are peculiar to the non-breaching party. *Id.* at 788. In Missouri, we still refer to the former as "general damages" and the latter as "special damages." *See, e.g., W.C. Hardesty v. Schaefer,* 139 S.W.2d 1031, 1035[5, 6] (Mo.App.1940); *see also Parsons Const. Co. v. Missouri Public Serv. Co.,* 425 S.W.2d 166, 173[10] (Mo. 1968); *see also* Rule 55.19.

■ Normally, when a building contractor breaches his contract by defective performance the other party is put in the position he would have been in by measuring his damages by either of two methods. One method, called the "cost of repair" is, as its name implies, the cost of repairing the defective work. The second method, called "diminution in value", is the difference between the building as promised and its value as actually constructed. *See, e.g., Hensic v. Afshari Enterprises, Inc.,* 599 S.W.2d 522, 524[2] (Mo.App.1980); Restatement, Second, *Contracts,* § 348 (1981). This, however, does not preclude the non-breaching party from pleading and proving special damages also suffered by him if he is entitled to those damages. 5 Corbin, *On Contracts,* § 1090 at 499 (1964).

In the present case, the Hernandezes did not seek the cost of repair or the diminution in value of the shell. At trial, the Hernandezes' counsel stated:

We agree in a normal construction case ..., when you get something less than what you paid for that's your measure of damage [cost of repair or diminution in

value]. We haven't paid anything for this [shell], we won't have to, but our client suffered other damages.

. . . . .

Specifically we plead [pled] some of these special damages.[4]

Moreover, the court did not consider general damages as an issue before it. The court, in its minute entry, characterized this action as an action "for damages for negligent construction work" and found "the cost rule and the diminished value rule of damages [to be] inappropriate in this ... case." Thus, the issue of damages here is an issue of special damage only.

■ No extended dissertation on special damages is needed here, however. *See,* Dobbs, *supra,* § 12.1, 12.3; 5 Corbin, *supra,* §§ 1006–10022. Basically, special damages are those which are not considered to arise "naturally" or "usually" from the breach of the contract but which arise from the circumstances peculiar to the contract and which should have been contemplated by the parties at the time they contracted. *See, e.g. Liberty Financial Management Corp. v. Beneficial Data Processing Corp.,* 670 S.W.2d 40, 57[26] (Mo.App.1984); *Parsons Constr. Co., supra,* 425 S.W.2d at 173[10]; Dobbs, *supra,* § 12.3.[5] The damages pled by the Hernandezes were the cost of renting an alternative residence, of estimates and appraisals of repairing the shell, of demolition of the shell and for "loss of use and enjoyment of the house on the location they had planned." Custom Builders, however, both in its objection at trial and in its arguments on appeal, does not contend these damages are not special damages, separate from and in addition to the general damages the Her-

nandezes admit they are not seeking. Rather, Custom Builders' contention is singularly focused—the only measure of damages proper here is general damages, either the cost of repair or the diminution in value; to Custom Builders, special damages are neither a relevant nor an appropriate consideration.

The cases cited by Custom Builders to support this argument, however, neither hold nor teach this narrow principle, *see Hensic, supra,* 599 S.W.2d at 524; *Lipton Realty, Inc. v. St. Louis Housing Auth.,* 705 S.W.2d 565 (Mo.App.1986), and our own research has disclosed no case which supports it. To the contrary, special damages may be and are awarded for a breach of a construction contract by defective performance when factually appropriate. 5 Corbin, *supra,* § 1090 at 499. C.f. *Stegan v. H.W. Freeman Constr. Co.,* 637 S.W.2d 794 (Mo. App.1982).

■ We view, then, the record on this issue of damages within the limits defined by Custom Builders' objection. *See, e.g., Frank v. Environmental Sanitation Management, Inc.,* 687 S.W.2d 876, 884[17] (Mo. banc 1985). Understandably, after 17 years, the record is not tidy. But neither Custom Builders' objection nor the Hernandezes' pleadings and proof require us to tidy up the record. Thus, we do not consider whether the Hernandezes' proof of special damages properly established a causal connection between the breach by defective performance and these damages[6] or properly established the certainty of their amount, and we do not consider whether these damages ought to have been within the parties' contemplation at the time they contracted. *See, e.g., Liberty Financial Management Corp., supra,* 670 S.W.2d at

---

**4.** Counsel did not express the precise rationale for this statement.

**5.** "[General and special damages] may be convenient as shorthand words to differentiate between those cases in which there are no unusual circumstances, and the sequence of breach and injury, as cause and effect, would be believed to be known to the ordinary man, and other cases in which there are unusual circumstances and there must be evidence that the defendant had reason to know them and to foresee the injury that has occurred.

Such terms are not self-explanatory, however; and the dividing line between what they signify is not capable of exact determination." 5 Corbin, *supra,* § 1011 at 85–86.

**6.** In pristine logic, the rent incurred by the Hernandezes was not directly caused by the alleged defective performance. The performance delayed the time the Hernandezes could reasonably expect to have a completed home, and this delay directly caused the rental expense.

57[26]. Nor do we consider special damages other than those pled by the Hernandezes. See, e.g., *Parsons Constr. Co., supra,* 425 S.W.2d at 173[11]. And, we do not consider whether these damages could have been avoided by the Hernandezes through reasonable efforts. *See, e.g., Shaughnessy v. Mark Twain State Bank,* 715 S.W.2d 944, 954[6] (Mo.App.1986).

What the Hernandezes did show they were entitled to on this record, by their pleadings and proof, were: (1) Rent at $100 a month from January 1973 until February 1974, for a total of $1200, and rent at $235 a month from February 1974 through March 1975, for a total of $3055; a grand total of $4255 rent. (2) Costs for estimates and appraisals of repair costs of $200. And, (3) cost of demolition of $500. Thus, the total special damages proved is $4955.

This amount is not what the trial court awarded the Hernandezes, and, thus, it is not the award Custom Builders attacks. The trial court awarded the Hernandezes $11,898 plus $500 for the demolition, $12,398. The record, however, does not justify this award. The $11,898, obviously, was an attempt to award the Hernandezes the exact amount of money they authorized Westoak to pay to Custom Builders after a decision was made about the alleged defects in construction. However, this was not the original contract price, and the trial court implicitly found there was no accord and satisfaction which established a new contract price. But, even if it were "the contract price", the award is not justified. If the shell were worthless, the Hernandezes would be entitled to the diminished value of the shell as it was to be constructed and zero. However, the $11,898 was never established to be the value of the shell as it was to be constructed; understandably so, for the Hernandezes admitted they never pled or proved diminution in value as a measure of their damages. On this record, the Hernandezes are entitled to $4955, and the judgment is modified accordingly to reflect this amount of damages.

## Custom Builders' Appeal of the Award of Prejudgment Interest

Custom Builders also challenges the court's award of prejudgment interest to the Hernandezes. This challenge has merit.

Prejudgment interest is only recoverable "where the amount of damages for which a defendant may be liable is liquidated or readily ascertainable by computation according to a recognized standard." *Brickner v. Normandy Osteopathic Hospital, Inc.,* 746 S.W.2d 108, 120[24] (Mo.App. 1988). This rule is grounded on the sensible premise that if the person liable does not know the amount he owes, he should not be considered in default because of his failure to pay. *Fohn v. Title Ins. Corp. of St. Louis,* 529 S.W.2d 1, 5[8] (Mo. banc 1975); *Brickner, supra,* 746 S.W.2d at 120[24]. *See also Catron v. Columbia Mut. Ins. Co.,* 723 S.W.2d 5 (Mo. banc 1987).

The damages claimed by the Hernandezes were special damages. The amount of those damages was not readily ascertainable by resort to the contract, mathematical calculation or a recognized standard; thus, Custom Builders "truly cannot be expected to know how much [it owed] and thus cannot be considered in default." *Catron, supra,* 723 S.W.2d at 8 (Robertson, J. concurring opinion). The part of the judgment awarding prejudgment interest is accordingly reversed.

## Hernandezes' Appeal of Damages Award

The damages award is also challenged by the Hernandezes. In 1976, some four years after construction on the shell had stopped, the Hernandezes obtained a loan to buy a home. At trial, the Hernandezes attempted to prove, as damages, the difference between the total cost of this loan and the cost of the loan they would have obtained to replace their construction loan for the shell. The trial court rejected the Hernandezes offer of proof and sustained Custom Builders' objection to this evidence on the grounds it was too speculative. We agree with this ruling.

The Hernandezes did not plead this item of damages as special damages. The Hernandezes are only entitled to those special damages expressly pled. Rule 55.19; *e.g., Parsons Constr. Co., supra,* 425 S.W.2d at 173[11]; *Duncan v. Townsend,* 325 S.W.2d 67, 70[4] (Mo.App.1959). Therefore, the ruling of the trial court was erroneous only if these damages are general damages. On the present facts, however, these damages are not general damages. The limits of the Hernandezes' general damages are properly defined either by the "cost of repair" rule or the "diminution in value" rule. *See, e.g., Hensic, supra,* 599 S.W.2d at 524[2]. Moreover, even if these damages were considered to be general damages, the trial court's ruling would not be an abuse of discretion. Proof of damages accruing some four years after the alleged breach of contract sensibly can be characterized as "too speculative."[7]

### Hernandezes' Appeal of the Judgment in Favor of Westoak

■ The Hernandezes also appeal from the adverse judgment on both counts in their action against Westoak. In their first count, the Hernandezes sought a judgment declaring "that any action of the deed of trust is barred ... and ordering [Westoak] to cancel the note and deed of trust and to release its record lien." The court found any action on the note was barred by the holding in *Hernandez III*[8] but that the deed of trust was still viable. The latter finding was based on *Belote v. McLaughlin,* 673 S.W.2d 27, 30 (Mo. banc 1984), in which the Court held that nonjudicial foreclosure remains a viable option until the underlying debt is actually satisfied. The Hernandezes accept the holding. They argue, however, the facts here make this case an exception to or distinguishable from the *Belote* case.

The Hernandezes' argument is threefold. These three arguments, however, are interrelated and are primarily based on what the Hernandezes' perceive to be the interrelationship between Custom Builders and Westoak. The Hernandezes contend Custom Builders and Westoak, in effect, are alter egos of one another, and, therefore, the two corporations should be considered the same corporate entity or the knowledge of one corporation should be imparted to the other. This alter ego contention is not persuasive.

To support its alter ego theory, the Hernandezes view the evidence through their own window. According to the Hernandezes, the record shows that, during the time in question here, William McGinnis was president of both Westoak and Custom Builders and James Sauter was the trustee on the deed of trust as well as a director of both Westoak and Custom Builders. Both McGinnis and Sauter, the Hernandezes note, inspected the shell because of the Hernandezes' complaints. At best, this is what the record does show.[9] But, this evidence does not establish that one corporation was the alter ego of the other.

Ordinarily, two separate corporations are regarded as two separate and distinct legal entities and their separate legal entities are disregarded only in special circumstances. *Terre Du Lac Ass'n., Inc. v. Terre Du Lac, Inc.,* 737 S.W.2d 206, 218[26–28] (Mo.App. 1987); *Liberty Financial Management Corp., supra,* 670 S.W.2d at 52[11–13].

---

**7.** Understandably, neither party cites *Cal–Val Const. Co. v. Mazur,* 636 S.W.2d 391, 392[1] (Mo.App.1982) nor *McDermott v. Burpo,* 663 S.W.2d 256, 264[15] (Mo.App.1983) in which the courts said that if a breach of contract "proximately caused" the loss of a loan commitment, it was within the discretion of the trial court to allow a credit for the increase in interest rates. These cases are distinguished on the issues raised and on the facts creating those issues.

**8.** In *Hernandez III,* we held that a suit by Westoak to recover on the promissory note executed by the Hernandezes was barred on the ground it was a compulsory counterclaim in the original suit brought by the Hernandezes.

**9.** Since the judgment in issue here was in a judgment in favor of Westoak, the evidence and inferences should be viewed most favorably to Westoak. See *Murphy v. Carron* and *Snowden v. Gaynor, supra.* This view is the reverse of the view required by the Custom Builders' appeal of the money judgment entered in favor of the Hernandezes. Neither we nor the trial court, however, have to indulge in this metaphysical compartmentalization. The result is the same regardless of the view.

"The mere·fact of 'ownership and control does not of itself authorize piercing the corporate veil.'" *Liberty Financial Management Corp., supra,* 670 S.W.2d at 52. The test for piercing the corporate veil is two pronged. First, one corporation must be controlled by the other; second, the corporate cloak must have been used as a subterfuge to justify a wrong or to perpetrate a fraud. *Terre Du Lac Ass'n., supra,* 737 S.W.2d at 218[27–28].

Here, the Hernandezes did not show how many corporate directors each corporation had, how many of these, other than Sauter, were directors of both corporations, how much stock Sauter or McGinnis owned in each corporation or any other relevant facts showing control of one corporation by another. *See, e.g., Phelps v. Missouri–Kansas–Texas RR Co.,* 438 S.W.2d 181, 185 (Mo.1968). More important, perhaps, there was no showing the corporate cloak was used as a subterfuge to justify a wrong or perpetrate a fraud. *Id.* at 186[4]. The record shows the Hernandezes were represented by counsel when their complaints about the construction were considered by McGinnis and Sauter and when they authorized the payment of $11,898 from Westoak to Custom Builders. The evidence here simply does not support the Hernandezes' alter ego theory.

 The Hernandezes, however, also contend that this Court, in *Hernandez II,* entered a judgment which, in effect, established their alter ego theory and that judgment precludes Westoak from contesting that issue here. We disagree.

In *Hernandez II,* this Court was confronted with a default judgment entered against Westoak. Allegations of the Hernandezes' petition in issue there have not been made part of the record before us. However, from the Court's opinion, it is clear the Hernandezes' action, in part, was an action to set aside a foreclosure sale brought under Westoak's deed of trust. *Hernandez II, supra,* 585 S.W.2d at 549. The trial court entered a default judgment against Westoak, denied Westoak's motion to set aside the judgment and we affirmed the denial. *Id.* It is the preclusive effect

of that default judgment which is in issue here.

Neither the parties nor our research has disclosed any Missouri case defining the preclusive effect of a default judgment. The Restatement suggests a default judgment is not conclusive in a subsequent action because in a default action "none of the issues is actually litigated." Restatement, Second, *Judgments* § 27, comment e. A few courts have rejected the Restatement view, reasoning the defendants "had an opportunity to appear and protect their interests. They deliberately waived the right to their day in court...." *Harvey v. Griffiths,* 133 Cal.App. 17, 23 P.2d 532, 534 (1933). *See also,* A. Vestal, *Res Judicata/Preclusion,* Chap. V, pp. 196–203 (1969). Arguably, issue preclusion would apply to a default judgment in Missouri, because a default judgment in Missouri is considered a judgment on the merits. *State ex rel. Brooks Erection & Const. Co. v. Gaertner,* 639 S.W.2d 848, 849–50[3, 5] (Mo.App. 1982). However, we need not decide here whether a default judgment should have preclusive effect. As with any judgment, a default judgment only precludes the relitigation of those issues necessarily resolved by that judgment. *Johnston v. Allis–Chalmers Corp.,* 736 S.W.2d 544, 548[8] (Mo.App.1987). It is difficult enough to delineate the issues on which litigation is, or is not, foreclosed by a prior judgment entered after a trial. This difficulty is made more acute by a default judgment, where, as here, the issues were not joined by responsive pleadings and no trial occurred. However, contrary to the Hernandezes' contention, the alter ego issue was not necessarily resolved by the default judgment in *Hernandez II.*

In *Hernandez II,* the trial court entered a default judgment on the Hernandezes' action to set aside the foreclosure sale and then denied Westoak's motion to set aside the default judgment. Westoak argued, before the trial court and on appeal, that the Hernandezes' petition failed to state a claim. In affirming the trial court, this Court set out what it considered to be the essential allegations supporting the Her-

nandezes' claim. The Hernandezes alleged: "Sauter [was] an officer and director of [Custom Builders and Westoak] as well as the trustee on the deed of trust"; Sauter, as trustee, failed to act "impartially" and was "biased and prejudiced in favor of Westoak"; "the construction work was grossly defective"; "Westoak and Custom Builders are one and the same entity"; since the "value of the land was $6000.00, the sale price of $500 to Westoak was unconscionable."

The Hernandezes, however, do not tell us what proof would be necessary to support a request to set aside a foreclosure sale and, thus, fail to tell us whether all or part of these allegations were necessary to support their request to set aside the foreclosure sale in *Hernandez II*. This failure, in turn, results in a failure to demonstrate to us that the alter ego theory was necessarily determined by the default judgment. We are not required to pick up the cudgels for the Hernandezes and make those arguments for them.

More important, perhaps, the record before us does not show the default judgment could not have been sustained without the allegation that "Westoak and Custom Builders [were] one and the same entity." For example, Sauter's alleged triple identity, as an officer and director of both Westoak and Custom Builders as well as the trustee on the deed of trust, along with his alleged "partiality", arguably, would be a sufficient added circumstance to the inadequate sale price to support the setting aside of the foreclosure sale. *Hernandez II*, 585 S.W.2d at 549; *Axman v. Smith*, 156 Mo. 286, 57 S.W. 105, 107 (1900). But, these allegations do not necessarily show Westoak and Custom Builders are alter egos of one another. Moreover, Sauter's alleged lack of impartiality would not necessarily need to rise to the level of subterfuge or perpetration of a fraud. Thus, even if the default judgment were to have preclusive effect, the identity of Custom Builders and Westoak as one and the same was not necessarily determined by the default judgment in *Hernandez II*.

With the alter ego theory gone, the keystone of the Hernandezes' arguments falls and, in turn, their dependent arguments fall. Thus, Hernandezes contend the trial court's award of $11,898 plus $500 for demolition shows the court found there was a "complete failure to consideration by Custom Builders ... in its performance of the construction contract," and, therefore, they argue, there was a "complete failure of consideration for the deed of trust." This argument presupposes that Custom Builders and Westoak were one and the same. This interrelationship was not demonstrated. Simply stated, on this record, Westoak lent money to the Hernandezes on their promise to pay, secured by a deed of trust. The Hernandezes contracted with Custom Builders, a separate corporate entity, to build the shell. The Hernandezes' complaint of failure of consideration because the shell was defective must be made against and limited to Custom Builders.

The Hernandezes also argue that Westoak and Custom Builders were so interrelated that Westoak necessarily knew the breach of contract and, thus, the lack of consideration when it disbursed the money to Custom Builders. Therefore, the Hernandezes contend, the disbursement was "unconscionable." This argument, based on an interrelation that was not proved, likewise must fall.

In summary, neither the evidence nor *Hernandez II* require the finding that Westoak and Custom Builders were one and the same corporation or so closely related that the the knowledge of one was imputed to the other. Likewise, the evidence does not preclude a finding that Westoak was not acting unconscionably when it acted on the Hernandezes' voucher. Additionally, the trial court's award of $11,898 plus $500 does not mean the trial court found Westoak failed to give consideration for the Hernandezes' debt. There is, thus, no reason for finding an exception to *Belote*.

### *Hernandezes' Final Point*

The Hernandezes also challenge the adverse judgment in their second count against Westoak. In that count they

sought to recover a penalty from Westoak under § 443.130, RSMo 1986. That statute authorizes a ten percent penalty against a mortgager that does not release a deed of trust within thirty days after a *tender of the amount due* and a request for release. The Hernandezes never tendered the amount due on the note, and, thus, the court correctly found against them in this action.

Accordingly, the judgment of damages is modified to award the Hernandezes $4955 from Custom Builders, instead of $11,898 plus $500. The judgment granting pre-judgment interest to the Hernandezes is reversed; in all other respects, the judgment is affirmed as modified.

SMITH, P.J., and STEPHAN, J., concur.