**Loyd WILLIAMS and Connie Williams, d/b/a C & L Home Improvements Company, Defendants–Appellants,**

**v.**

**Dennis HUBBARD and Sandee Hubbard, Plaintiffs–Respondents.**

**No. WD 41879.**

Missouri Court of Appeals,
Western District.

April 17, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 1990.

Cenobio Lozano, Jr., Harrisonville, for defendants-appellants.

Stephen K. Nordyke, Butler, for plaintiffs-respondents.

Before KENNEDY, P.J., and LOWENSTEIN and BERREY, JJ.

BERREY, Judge.

Appeal from a judgment after jury trial awarding $29,000 in assessed damages to plaintiffs/respondents in a case involving a breach of contract for failure to perform home improvement work in a good and workmanlike manner. Appellants present four points in this appeal, but only the first of these will be addressed as it is dispositive. Appellants contend that the trial court erred to their prejudice by instructing the jury as to the wrong measure of damages. Reversed and remanded for a new trial.

Respondents, Sandee and Dennis Hubbard purchased their home in Butler, Missouri, in 1983. In 1987, the Hubbards entered into a series of contracts with appellants, C & L Home Improvements Company, Loyd Williams' company. These contracts called for C & L to: (1) install vinyl siding and vented insulation on the Hubbards' house at a cost of $7,750; (2) construct a front porch with posts set in concrete having a roof with the same pitch as the house, at a cost of $1,006; (3) construct a double garage, install floor tile, install a shower and put in new heating and air conditioning units at a cost of $13,248; and (4) install an atrium door, a steel door between the kitchen and garage, and a steel door with a storm door for the front door at a cost of $1,600.

The work was done by C & L, but the end product left something to be desired. Numerous witnesses testified regarding the quality of the work. The siding installed did not carry the lifetime warranty specified in the contract. Both of the Hubbards testified that the siding was not properly installed. Gaps were left around the doors and proper caulking was not done. There was leakage around the doors and windows which allowed water to enter the house. Nor was the insulation installed under the siding properly as its seams were not taped as called for in the contract.

The porch constructed by C & L had water problems. The shingles did not extend over the outside and water would run underneath. Allen Berwald, a builder called as a witness for the plaintiffs, testified that the porch posts were put in the ground and that they would not last. The garage constructed by C & L was also substandard. The concrete poured for the floor of the garage was not square with the house. Water leakage was also a problem. The garage was not built on the same slope as the house and the door purchased to be installed between the garage and house could not be used. The garage doors fall off continually, and the windows will not stay closed.

There are also problems with the flooring installed by C & L, as well as the heating and air conditioning units. Respondents also experienced difficulty with the shower they had installed as water ran out from the bottom.

As might be expected, the witnesses gave a wide range of monetary values when testifying as to the damages suffered by respondents. Mrs. Hubbard testified that the value of the property prior to the work was $39,000. After the work was done she felt that the house was worth nothing and the land was worth $5,000., resulting in an estimate of damages of $34,000. Mr. Hubbard's estimate was substantially the same; his estimate as to damages netted out at $35,000. Robert Jefferson, respondent's appraiser, testified that the house was worth $39,000 before the work and $11,500 after. Witness Berwald was of the opinion that it would cost $27,235.45 to bring the respondent's home to the condition it would have been in had the contracts been properly performed. Larry Ritter, the appellants' appraiser testified that prior to the work the house was worth $38,500 and that after it was completed it was worth $45,000 but, had the work been done properly, the house would have been worth $56,000.

The case was submitted to a jury. They returned a verdict in favor of respondents for $29,000. From the judgment entered on the verdict, this appeal is taken.

Appellants contend that the trial court erred by instructing the jury with an incor-

rect measure of damages. They are correct in this contention. The instruction given to the jury read as follows:

### Instruction No. 8

If you find in favor of plaintiffs, then you must award plaintiffs such sum as you may find from the evidence to be the difference between the fair market value of plaintiffs' property before it was damaged and its fair market value after it was damaged.

■■■ This instruction is MAI 4.02 unmodified. MAI 4.02 is normally applied to personal property damages. In a breach of contract case, the goal in awarding damages is to make an award that will put the non-breaching party in as good a position as he would have been in if the contract had been performed. *Hernandez v. Westoak Realty & Inv., Inc.*, 771 S.W.2d 876, 880 (Mo.App.1989). To do this, one of two measures is generally applied, either the "cost of repair" method or the "diminution in value" method. *Hensic v. Afshari Enterprises, Inc.*, 599 S.W.2d 522, 524 (Mo. App.1980). The cost of repair is basically self-explanatory; it involves the cost of repairing the defective work. Diminution in value is measured by the difference between the building as promised and its value as it was actually constructed. *Id.* Neither of these measure was used in the instant case as a measure of damages.

■■■ Respondents concede in their brief that diminution in value is the proper measure of damages in this case saying, "Of course, establishing that diminution in value is the appropriate measure does not end the inquiry...." Respondents go on to contend that appellants are not entitled to a reversal because they were not prejudiced by the giving of Instruction No. 8. Respondents then strain the boundaries of mathematical inquiry to demonstrate that no prejudice occurred, intermixing a cost of repairs approach and the diminution in value approach. Under the evidence of valuation as presented it is not possible to determine what the jury would have done had the proper measure of damages been used. A simple example, however, may suffice to show that the verdict could have been lower if the proper formula was applied. Larry Ritter testified that had the work been done properly, the value of respondents property would have been $56,000. As it was, the property was worth $45,000. Applying the diminution standard (property as promised minus property as actually constructed) a total of $11,000 is reached. Although this may not be the figure the jury would reach, it is possible if the correct standard is used.

Therefore, as an incorrect method of determining damages was contained in the jury instructions to the possible prejudice of appellants, the judgment is reversed and the cause remanded for a new trial.

All concur.